FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

FEB 08 2018

JAMES W. McCORMACK, CLERK
By: _____
                    DEP CLERK

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS

DAVID A. STEBBINS                                                PLAINTIFF

VS.                   CASE NO. 4:17-cv-00711-JM-JTK

KENNETH HIXSON, DAVID GLOVER,                             DEFENDANTS
PHILLIP WHITEAKER, AND THE STATE OF ARKANSAS

## BRIEF IN SUPPORT OF RESPONSE IN OPPOSITION TO [014] MOTION TO DISMISS

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Brief in Support of my Response in Opposition to the Defendants' Motion to Dismiss.

### Section 1: Preliminary Matters

1.      Before we continue, I wish to remind the Court of some very important limitations on its power.

2.      First, this Court cannot raise new claims or defenses sua sponte, unless it pertains to the Court's subject-matter jurisdiction.

     (a)      See Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011)

     "Under [the adversarial system], courts are generally limited to addressing the claims and arguments adv-anced by the parties. Courts do not usually raise claims or arguments on their own"

     (b)      See also Sanchez-Llamas v. Oregon, 548 US 331, 356-57 (2006)

     "The consequence of failing to raise a claim for adjudication at the proper time is generally forfeiture of that claim. As a result, rules such as procedural default routinely deny 'legal significance' ... to otherwise viable legal claims."

     (c)      See also Sayre v. Musicland Group, Inc., 850 F. 2d 350, 353 (8th Cir. 1988) (failure to plead affirmative defenses constitutes waiver of that defense, even if not specifically listed in Rule 8(c)).

     (d)      See also Sartin v. Commissioner of Pub. Saf. of St. of Minn., 535 F. 2d 430, 433 (8th

Cir. 1976) (same).

3. This means that, if the Defendants, in their response to this motion, fail to establish any dispute of material fact, this Court cannot "bail out" the Defendants by raising its own disputes of material fact. To do so would cause the court to become an advocate for the defense, and I should not even have to explain to you why that is not allowed.

4. I would also like to remind this Court that it cannot issue an order without giving an explanation behind it. Failure to give an explanation constitutes an automatic abuse of discretion.

    (a) See US v. Burrell, 622 F. 3d 961, 964 (8th Cir. 2010) ("We have held that a district court need not give lengthy explanations ... but this does not permit a district court to give no explanation for its decision").

    (b) See also Rayes v. Johnson, 969 F. 2d 700, 704-705 (8th Cir. 1992)

> "The district court may have had reason to deny Rayes' request for subsequent counsel, but no explanation appears in the record. The request was summarily denied twice."

    (c) See also Slaughter v. City of Maplewood, 731 F. 2d 587, 589 (8th Cir. 1984)

> "[W]e nevertheless find it necessary to remand because we cannot determine from the record whether the district court exercised a reasoned and well-informed discretion, so as to permit our review for abuse of discretion."

    (d) See also Foman v. Davis, 371 US 178, 182 (1962)

> "[O]utright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."

    (e) See also Gulf Oil Co. v. Bernard, 452 US 89, 103 (1981)

> "We conclude that the imposition of the order was an abuse of discretion. The record reveals no grounds on which the District Court could have determined that it was necessary or appropriate to impose this order."

    (f) See also US v. Walters, 643 F. 3d 1077, 1080 (8th Cir. 2011) ("given the lack of

specific findings and the evidence in the record, we find that the district court abused its discretion").

(g)     See also Jarrett v. ERC Properties, Inc., 211 F. 3d 1078, 1084 (8th Cir. 2000) ("The district court's good faith finding was stated in conclusory fashion with no explanation ... Therefore, the court abused its discretion").

(h)     See also Thongvanh v. Thalacker, 17 F. 3d 256, 260 (8th Cir. 1994) ("A careful review of the record reveals no explanation whatsoever for the reduction. Accordingly, the jury award of $4,000 is restored").

(i)     See also Purcell v. Gonzalez, 549 US 1, 8 (2006) ("There has been no explanation given by the Court ... we vacate the order of the Court of Appeals")

(j)     See also Press-Enterprise Co. v. Superior Court of Cal., Riverside Cty., 464 US 501, 513 (1984)

> "Thus not only was there a failure to articulate findings with the requisite specificity but there was also a failure to consider alternatives to closure and to total suppression of the transcript. The trial judge should seal only such parts of the transcript as necessary to preserve the anonymity of the individuals sought to be protected."

(k)     See also United States v. Grinnell Corp., 384 US 563, 579 (1966) ("The District Court gave no explanation for its refusal to grant this relief. It is so important and customary a provision that the District Court should reconsider it").

(l)     See also Delaware v. Van Arsdall, 475 US 673, 680 (1986) ("In so doing, it offered no explanation why the Chapman harmless-error standard ... is inapplicable here.")

5.      This means that, if this Court wishes to deny this Motion, it must actually state with particularity which facts are in dispute, point to the evidence presented by the defense to show that this dispute exists1, and provide citations of law.

6.  Last but not least, I would like to remind the Court of the stringent standards to which a Motion to Dismiss is held. By the Defendants' own admission[1], a complaint should only be dismissed for failure to state a claim if it appears beyond doubt that the Plaintiff can prove no set of facts that would entitle him to relief.

7.  Furthermore, when considering a motion to dismiss for failure to state a claim, the Court must "accept as true all factual allegations set out in the complaint" and to "construe the complaint in the light most favorable to the plaintiff[s], drawing all inferences in [their] favor." See Ashley County, Ark. v. Pfizer, Inc., 552 F. 3d 659, 665 (8th Cir. 2009). This means that the Defendants' factual allegations that (A) the current mandate did not require the trial court to undertake any particular action, and (B) the three individual defendants were not even personally aware of my litigation history before the filing of this lawsuit, (C) that I personally have not been deterred in the filing of lawsuits by the State's actions and that "the odds of Stebbins continuing to file lawsuits is close to 100%," as well as any other factual allegations they may have made in their motion, cannot be decided by the Court at this stage. The Court must presume those factual allegations as lies unless I admit to them in my Complaint.[2]

8.  With that said, let us move onto the Brief proper.

### Section 2: What the Defendants have NOT raised

9.  There are quite a few arguments I expected the Defendants to raise in this Motion to Dismiss that, to my pleasant surprise, they did not raise. Since the Court cannot raise defenses or grounds for dismissal sua sponte (see ¶¶ 2-3 of this Brief), that means that these grounds for dismissal are waived by the Defense. Although they have argued that I have not plead sufficient

---

1  See Page 7 of the Defendants' Brief in Support of Motion to Dismiss.
2  Although the Court is generally required to construe the facts in a light most favorable to the plaintiff, a motion to dismiss for failure to state a claim can indeed be granted "in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." See Bennett v. Berg, 685 F. 2d 1053, 1058 (8th Cir. 1982).

facts for a claim of First Amendment Retaliation, they do not argue that I have failed to plead sufficient facts for a constitutional violation. Remember: Those two claims were separate. In my Complaint and Jury Demand, ¶¶ 32-36 dealt with the constitutional violation, and ¶¶ 37-40 dealt with the First Amendment Retaliation claim. Only the second one is even arguably challenged by the Defendants' current motion.

10. So regardless of what happens in this motion, I am still entitled to proceed on the claim of constitutional violation without regard to retaliation.

11. Please keep that in mind while reviewing the Defendants' Motion to Dismiss.

### Section 3: There is no collateral estoppel

12. The first of three arguments the Defendants raise for dismissal is that this dispute has already been finally adjudicated in the case of Stebbins v. State of Arkansas, et al, 3:17CV03016 TLB in the U.S. District Court for the Western District of Arkansas, and therefore are barred by res judicata and collateral estoppel.

13. This argument is patently frivolous. Collateral estoppel only bar a suit if the second lawsuit seeks to hold the Defendant liable for the *exact same* actions as the first lawsuit does. State Office of Child Support Enforcement v. Willis, 59 SW 3d 438, 4445 (2001) ("Collateral estoppel requires actual litigation in the first instance").

14. While the Defendants maintain that this case contains the same disputed issues as the 2016 lawsuit, put simply, this is demonstratably false.

15. That case concerned an order to *supplement* the record. When the State of Arkansas was served with process in that case, a mere four days later, the Boone County Circuit Clerk finally complied with its order to supplement the record, five and a half months late.

16. The current lawsuit contains a completely separate opinion and mandate, one that was not

and could not have been the subject of the 2016 lawsuit, since it did not exist when that lawsuit was filed.

17. Now, if I lose this case for whatever reason, and I then proceed to file a third Motion to Enforce Mandate with the AR Court of Appeals, only for it to be denied in a similar fashion as the first two, and I were to sue again for their refusal to enforce the mandate, THEN it would be barred due to res judicata. At that point, we would indeed be litigating the non-enforcement of the same mandate. However, in the current case, the Defendants have no clami to res judicata because is a different mandate.

18. I am fascinated by how the Defendants believe this case seeks liability over the same overt action as the 2016 lawsuit when it clearly does not. Do they believe that one judgment forever precludes litigation of *substantially similar* issues between the same parties and their privies, even if it is not the exact same set of actions? If so, then the Defendants are arguing a very dangerous slippery slope. By that logic, if one person sues another person for assault and battery, and loses, then the defendant in that case can go and beat up his plaintiff out of revenge, and that plaintiff cannot file another lawsuit against that same defendant for assault and battery because he had already sued that defendant for assault and battery before and lost! Even though this is a brand new instance of battery, by the Defendants' logic in this current motion, that would still be barred by res judicata because it is A) an assault and battery lawsuit, B) filed by the same plaintiff, and C) against the same defendant. By that point, that defendant would essentially have free reign to use the plaintiff as his perosnal punching bag for the rest of their lives unless the prosecuting attorney *chooses* to charge the Defendant with a crime … something the plaintiff cannot force the prosecutor to do.

19. Just on this alone, the Defendants' claim that this lawsuit is barred by collateral estoppel

is not only demonstratably false, but is patently frivolous and should be sanctioned.

### Section 4: There is no res judicata.

20.     Unlike collateral estoppel, "[r]es judicata bars not only the relitigation of claims that were actually litigated in the first suit but also those that could have been litigated." See Willis, supra at 443. However, that still does not save the Defendants here.

21.     The mandate whose non-enforcement is crux of this case did not even exist at the time the 2016 lawsuit was filed. Therefore, it would have been quite impossible for me to sue for the non-enforcement of a mandate that simply did not exist.

22.     Even if both the mandate and the orders denying the motions to enforce[3], existed at the time, they would still need to demonstrate how it would have been improper for me to seek redress against both adverse actions in separate proceedings. Put simply, the Defendants have not done so. Therefore, their claim that this case is barred by res judicata is patently frivolous and entirely without merit.

### Section 5: Hixson, Glover, and Whiteaker are NOT entitled to judicial immunity.

23.     The Defendants maintain that their actions were judicial in nature, and therefore are protected by judicial immunity. However, they make no effort to clarify how, exactly, the underlying conduct (refusal to enforce the mandates) constitutes a judicial act, rather than an enforcment act. They just *claim* that their actions judicial. They "were judicial acts," period, and that is simply all there is to it. They appear to believe that the judicial nature of these acts is obvious and requires no explanation.

24.     If it really was that obvious, I think this Court would have noticed it themselves while they were considering my application for leave to proceed *in forma pauperis*. If this Court saw

---

[3] Remember: The two orders denying motion to enforce mandate are just as essential to this claim as the mandate itself. Those are the adverse actions which are complained about here; the mandate itself is merely necessary to show that the two orders were unconstitutional. Thus, in order for res judicata or collateral estoppal to be even arguably applicable, not only must the mandate exist, but the orders declining to enforce it as well.

the judicial nature of the Defendants' actions and saw right through my thinly-veiled attempts to disguise them as enforcement rather than judicial, I think this Court would have dismissed the action before serving the Defendants pursuant to 28 U.S. Code § 1915(e)(2)(B)(iii).

25. That's not to say that this Court's determination is sacrosanct and cannot be challenged by the Defendants. The Defendants absolutely do NOT lose the right to move to dismiss on grounds the Court previously had the opportunity to consider. They retain this right just in case the court might have made an error in its judgment.

26. However, for the Defendants to argue that their overt actions were judicial rather than enforcement, and that the Court was in error when it did not notice that earlier, would require more explanationn than just *claiming* that their actions "were judicial acts" and providing no context whatsoever beyond that.

27. If anything, the Court should take the Defendants' motion, in its current state, as a personal insult! The Defendants' argument for judicial immunity, as it is currently written, implies that the Court is completely imcompetent for its failure to see the judicial nature of the Defendants' actions!

28. Remember that this Court cannot issue a ruling without providing an explanation. See ¶¶ 4-5 of this Brief. That means that this Court cannot simply claim that the Defendants' actions "were judicial acts" and end the findings of fact there, and yet, that is what the Defendants are asking this Court to do.

29. For this reason, the Defendants' claims of judicial immunity must fail, and I should be allowed to proceed on both claims of constitutional violation and First Amendment Retaliation.

### Section 6: It is necessary for judicial immunity to not apply here.

30. Not only does clearly established law show that judicial immunity is not applicable in the

present case, but even as a novel issue of law, it would be wholly improper, and entirely inconsisten with our most dearly-held constitutional principles, for judicial immunity to apply in the present case.

31. The only reason judicial immunity is tolerated is because it is presumed that judicial errors can be corrected on appeal. See Pierson v. Ray, 386 US 547, 554 (1967) ("His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption"). See also Stump v. Sparkman, 435 US 349, 368 (1978) (same).

32. Thus, the jusitification of judicial immunity rests exclusively on the availability of appeal to correct errors. If appeal is ineffective at correcting judicial errors, then judicial immunity becomes nothing more than a totalitarian doctrine that protects corrupt judges for the sake of protecting judicial corruption and nothing more.

33. Here, I got my appeal, at least to some degree. But then the trial court decided to ignore even *that* mandate, and instead just proceed to rule however they wanted without regard to the law. At this point, appeal has proven ineffective at correcting these errors. Therefore, I am entitled to go over the Court of Appeals' head. My constitutional right to due process of law requires it.

### Section 7: My personal chilling or hesitation is not an essential element of First Amendment Retaliation.

34. Next, the Defendants argue that I have failed to allege sufficient facts to state a viable claim for First Amendment Retaliation.

35. Bear in mind that this section of the Defendants' Brief in Support of Motion to Dismiss only tackles the sufficiency of my First Amendment Retaliation claim. As I pointed out in Section 2 of this Brief, they have not even attempted to argue that my claim of constitutional

violation in ¶¶ 32-36 of my Complaint and Jury Demand does not plead sufficient facts. Therefore, if the Court rejects the first two of the Defendants' grounds for dismissal, then I am still entitled to proceed on my constitutional violation claim.

36. With that said, the first argument they present for dismissal of the First Amendment Retaliation claim is that I have not been chilled in the exercise of my First Amendment rights.

37. Assuming without conceding that I have not in fact been chilled by the Defendants' conduct, put simply, this is not an essential element of First Amendment Retaliation. See Garcia v. City of Trenton, 348 F. 3d 726, 729 (8th Cir. 2003) ("The question is not whether the plaintiff [him or] herself was deterred ... What would a person of 'ordinary firmness' have done in reaction to the tickets? Would he or she have simply ignored them, or would he or she have been slowed down, at least to some degree?"). That last part - "at least to some degree" - is very important here. "The effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable." See Garcia, *supra* at 729.

38. See also Rhodes v. Robinson, 408 F. 3d 559, 568-569 (9th Cir. 2005) ("[W]e have never required a litigant, *per impossibile*, to demonstrate a *total* chilling of his First Amendment rights to file grievances and to pursue civil rights litigation in order to perfect a retaliation claim. Speech can be chilled even when not completely silenced ... [I]t would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity"). See also Lámar v. Steele, 693 F. 2d 559, 562 (5th Cir. 1982) ("The [plaintiff]'s reaction to the [adverse action] is likewise immaterial. It is not necessary to show that the [plaintiff] succumbed to the [adverse action] as a predicate for securing § 1983 relief. The contrary rule would result in the anomaly of protecting only those

individuals who remain out of court"). See also Hudspeth v. Figgins, 584 F.2d 1345, 1348 (4th Cir.1978) ("Nor is it necessary that the [plaintiff] succumb entirely or even partially to the threat").

39.     At this early stage of the litigation, to determine whether the underlying conduct would have chilled a person of "ordinary firmness," the Court should employ its common sense. Remember that a motion to dismiss for failure to state a claim should only be granted if "it appears beyond doubt that the Plaintiff can prove no set of facts that would entitle him to relief," as the Defendants themselves concede on Page 7 of their Brief in Support of Motion to Dismiss. Therefore, when deciding this Motion, the Court should give me the benefit of the doubt unless the Defendants' conduct was so clearly benign that nobody – not just me, but anybody – would ever take it as even the slightest indication that the State wants them to slow down the filing of lawsuits. Remember that the retaliation "need not be great in order to be actionable." See Garcia, *supra* at 729.

40.     But even if this Court were to decide that my First Amendment rights must be personally chilled in order for me to proceed on a claim of First Amendment Retaliation, I am still entitled to proceed on this claim, because ...

**Section 8: My personal exercise of my right to court access has indeed been chilled.**

41.     Assuming without conceding that the Court believes it is necessary for my First Amendment rights in particular to be chilled, we still have evidnece of that. Even in the context of the very complaint they seek to have dismissed, there is a clear chilling of my right to court access, personally.

42.     As I pointed out in Paragraph 29 of the Complaint and Jury Demand, thanks to the Defendants' refusal to enforce their own mandate, "[n]ot only am I unable to litigate the eight (8)

claims that remain in the Circuit Court case, but I also am forever barred from obtaining an appeal on the merits of the two claims that were adjudicated."

43. Just on that alone, we can safely say that my ability to access the courts has been stripped from me, even if I might have been fully willing to file had I been given unrestricted access to the Courts. Indeed, this is the very injury I seek to redress for the constitutional violation I mentioned in ¶¶ 32-36 of my Complaint ... a tort the Defendants are not challenging in the present motion.

44. That alone sufficiently establishes the second essential element for First Amendment Retaliation. Therefore, their argument that I have not sufficiently plead the second essential element of First Amendment Retaliation must be rejected by this Court.

### Section 9: The Defendants are purposefuly skewering the wording of my complaint to create the illusion that it is nonsensical.

45. Next, the Defendants argue that my Complaint is nonsensical. At the bottom of Page 12 of their Brief, the Defendants state "Stebbins then argues the defendants were on notice by 'judicial notice' that there were other lawsuits out there that he had filed. (DE 2, ¶ 39)."

46. This is not what ¶ 39 of my Complaint said at all. To the contrary, ¶ 39 of my Complaint stated that the **_second essential element_** of **_First Amendment retaliation_** was established by judicial notice.

(a) As the Defendants correctly argue, the second essential element of First Amendment Retaliation is "an adverse action that would chill a person of ordinary firmness from engaging in activity protected by the First Amendment." See Revels v. Vincenz, 382 F. 3d 870, 876 (8th Cir. 2004).

(b) The adverse action which establishes this essential element is the Defendants' two orders denying the motion to enforce the mandate.

    (c)    Both of those orders are public reocrd and therefore is judicially noticeable.

47.    Clearly, I never said that the Defendants necessarily retaliated against me because my litigation history is public record. I have no idea where they got that from.

48.    Next, the Defendants argue …

> "In addition, Stebbins describes this alleged disdain every employee of the State of Arkansas has for him, and how at every turn, they have "harassed, badgered, bullied, and persecuted him" - all of which the Defendants *could have* been mde aware of, which would therefore have made them aware of his extensive litigation history. (DE 2, ¶ 17)."

49.    While I concede that ¶ 17 of my Complaint and Jury Demand states that the State of Arkansas have a long history of harassing, badgering, bullying, and persecuting me on account of my litigation history, the Defendants have everything else about that paragraph confused. If anything, it is their subsequent interpretation that appears to be nonsensical.

50.    Are they saying that the Defendants should be presumed to know about my litigation history just because they could have been aware of my litigation history? That is not what I said at all. The Defendants did indeed know about my litigation history, and it was not simply because my litigation history was on public record. No, the three individual defendants in this case – Hixson, Glover, and Whiteaker – were all *personally aware* of my litigation history long before they even issued the mandate, let alone refused to enforce it, and I will indeed be able to prove that when the time comes. I will prove it so thoroughly that the Defendants will be on their knees begging for me to settle out of court with them because they do not want to be publicly humiliated and exposed for the liars they are!

51.    For the time being, however, I ask that this Court simply deny their Motion to Dismiss because they are clearly confused as to what the Complaint actually alleges.

**Section 10: Relief sought.**

52.     Lastly, the Defendants argue that none of the relief I have requested is proper.

53.     As an initial matter, I ask that this Court delay consideration of this portion of their Motion. Even if it is true, this would not cause the entire case to be thrown out. I am only restricted to the relief I requested in my Complaint in the event of a default judgment. "Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." See Fed.R.Civ.P. 54(c). Thus, even if I am not entitled to the exact relief I have requested in the Complaint, by proving that the Defendants have legally wronged me at all, I would still be entitled to *some* relief. The exact nature and amount of that relief can be determined by the Court whenever it becomes appropriate. Thus, as an initial matter, I ask that we cross that bridge when we come to it.

54.     If, however, the Court sees fit to take up this issue immediately, then the Defendants' arguments are still without merit.

55.     They argue that neither of the injunctions I have requested were directed at the three individual judges. This is false. The first injunction was not directed towards Boone County Circuit Clerk. The injunction I asked for was for the three individual defendants in this case "to vacate their Order Denying the Motion to Enforce Mandate, and subsequently take whatever actions are necessary to ensure the Circuit Court's compliance with that order." I have no idea where the Defendants got the idea that my requested injunction would have been directed at the Boone County Circuit Clerk.

56.     The Defendants have explicitly declined to argue that my second injunction (the everlasting injunction against the State of Arkansas) is improper. However, I do wish to emphasize that this injunction is not only proper, but necessary. It is the only way to get the State of Arkansas permanently off my back. They want me to stop filing so many lawsuits, right? So

they need to stop giving me reasons to sue them!

57.    To close out the Defendants' 21[4] pages of frivolousness, they argue that the three individual defendants cannot be held liable for damages. Even if that were true, I am still entitled to recover damages against the State of Arkansas.

## Conclusion

58.    In conclusion, the Defendants' Motion to Dismiss is patently frivolous from top to bottom. It is astonishing how much they completely warp the facts, and even basic common sense, to make their arguments appear even the slightest bit non-frivolous. Nothing in their motion even comes close to being non-frivolous. They rely almost exclusively on warping the facts, outright lying, and pretending like my complaint is nonsensical when it clearly is not.

59.    Not only should the Defendants' Motion to Dismiss be denied, but the Defendants should be sanctioned for wasting everyone's time with such a frivolous motion.

So requested on this, the 5th day of February, 2108.

/s/ David Stebbins
David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com

---

4    6 pages for the Motion to Dismiss, and 15 pages for the Brief.